IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARL EDWARD BELL,** | : CIVIL ACTION NO. 1:22-CV-1383 |
| **Plaintiff** | : (Judge Conner) |
| v. | : |
| **MORRIS HOUSER**, *et al.*, | : |
| **Defendants** | : |

**MEMORANDUM**

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Carl Edward Bell, alleges that defendant prison officials violated his rights under the Fifth and Fourteenth Amendments by confiscating a tax rebate check without providing due process. Bell additionally alleges that defendants have retaliated against him in violation of the First Amendment. Defendants have moved to dismiss. Bell has moved to stay resolution of the motion until all discovery has been completed and has requested issuance of a case management order. The motion to dismiss will be granted in part and denied in part, the motion to stay resolution of the motion to dismiss will be denied, and the motion for a case management order will be granted.

**I.      Factual Background & Procedural History**

Bell has been incarcerated in Benner Township State Correctional Institution ("SCI-Benner Township") at all relevant times. He filed his original complaint on September 7, 2022. (Doc. 1). The court dismissed the complaint for failure to state a claim upon which relief could be granted pursuant to 28 U.S.C. §

1915(e)(2) and 28 U.S.C. § 1915A on September 14, 2022, and granted Bell leave to amend. (Docs. 8-9). Bell timely amended his complaint on October 10, 2022, and the court received and docketed the amended complaint on October 18, 2022. (Doc. 13). Upon reviewing the amended complaint, we directed the Clerk of Court to serve defendants on October 21, 2022. (Doc. 14).

According to the amended complaint, Bell filed a 1040 tax form with the Internal Revenue Service ("IRS") on October 11, 2020, to apply for a tax rebate. (Doc. 13 ¶ 11).[1] Bell did not receive his rebate for several months, despite other inmates in the prison receiving rebates during that period. (See id. ¶ 12). On February 8, 2021, he received a memorandum from the Pennsylvania Department of Corrections ("DOC") stating that inmates could claim a rebate credit on their 2020 tax returns if they had not previously received their tax rebates. (Id. ¶ 13).

Bell wrote a letter to SCI-Benner Township's inmate accounts department on February 8, 2021. (Id. ¶ 14). In the letter, he stated that he was concerned that his tax rebate would be confiscated by prison officials if it were mailed directly to the prison and asked if he could alternatively have the check sent to his aunt, Tammy Bell, who would then forward the check to the prison. (Id.) Bell received a response to the letter on February 11, 2021 from the inmate accounts department,

---

[1] The court takes judicial notice that the IRS provided advance payments for tax rebate credits on 2020 tax returns during the calendar year 2020 as a form of economic stimulus during the COVID-19 pandemic. See *Recovery Rebate Credit*, INTERNAL REVENUE SERVICE, https://www.irs.gov/newsroom/recovery-rebate-credit (last visited May 30, 2023).

stating that if the prison receives the check, it will be deposited in his inmate trust account. (Id.)

Bell sent a second letter on February 9, 2021, addressed to defendant Boone, the supervisor of SCI-Benner Township's mailing department. (Id. ¶ 16). The letter asked if Boone was confiscating tax rebate checks mailed to the prison and asked why inmates had not yet received their checks. (Id.) Boone responded on February 11, 2021, allegedly stating that he was not confiscating checks and that if he received a check in the mail he would write a receipt for the check and send it to the inmate accounts department for deposit in the inmate's trust account. (Id. ¶ 17).

On February 18, 2021, Bell mailed a 1040 tax form to the IRS requesting a tax rebate. (Id. ¶ 18). Bell spoke on the phone with Tammy Bell on May 12, 2021, who informed him that she had received his tax rebate check for $1,802.07 on May 10, 2021. (Id. ¶ 20). Bell requested that Tammy Bell send the check to the inmate accounts department. (Id. ¶ 21). She purportedly did so on May 14, 2021. (Id. ¶ 22). Bell allegedly wrote a letter to the inmate accounts department on May 14, 2021, stating that Tammy Bell had sent the check. (Id. ¶ 23). Bell did not receive a response to the letter or a follow-up letter that he sent a week later. (Id. ¶ 24).

On May 30, 2021, Bell filed a grievance complaining that the inmate accounts department had not deposited his rebate check and had not responded to his inquiries. (Id. ¶ 25). Bell alleges that after he filed the grievance, unnamed prison officials began retaliating against him by denying his requests to use the prison's law library. (Id. ¶ 26).

On August 28, 2021, Bell wrote a letter to the IRS inquiring as to the status of his tax rebate. (Id. ¶ 27). He received a response on October 1, 2021, from IRS agent Marjorie Gallagher, who confirmed that the IRS had sent him the rebate. (Id. ¶ 28). Bell filed a grievance against Boone on the same date, alleging that Boone and his subordinate employees in the prison's mailing department had violated his First Amendment rights and his right to due process. (Id. ¶ 29).

Bell spoke with Captain Bookheimer on October 15, 2021 regarding his grievance. (Id. ¶ 30). Bookheimer had previously reviewed the response Bell received from Gallagher and purportedly stated that he would attempt to get Bell compensated for the tax rebate. (Id.)

Bell's grievance was denied on October 20, 2021. (Id. ¶ 31). He appealed to Defendant Houser, the prison's superintendent. (Id. ¶ 32). Houser denied the appeal on November 30, 2021, and Bell appealed to the DOC's central office. (Id.) Bell avers that he has not received a response to the appeal. (Id. ¶ 33). Bell has purportedly attempted to communicate with Gallagher in the ensuing months but has had his attempts to send mail to her rejected by the mailing department, allegedly in retaliation for Bell filing his grievances. (Id. ¶¶ 34-35). Officials in the mailing department have also allegedly hindered Bell's ability to communicate with an outside attorney in retaliation for the grievances. (Id. ¶ 36).

The complaint asserts civil rights claims pursuant to Section 1983 against Boone and Houser for retaliation in violation of the First Amendment and violation of Bell's right to due process under the Fifth and Fourteenth Amendments. (Id. ¶

41).  Bell requests declaratory relief, injunctive relief, and compensatory and punitive damages.  (Id. ¶¶ 42-45).

Defendants moved to dismiss the amended complaint on December 23, 2022.  (Doc. 21).  Defendants raise four arguments for dismissal: (1) that the amended complaint fails to plead their personal involvement in the alleged civil rights violations; (2) that the due process clause of the Fifth Amendment does not apply to the actions of state government officials; (3) that the amended complaint fails to state a First Amendment retaliation claim upon which relief may be granted; and (4) that the amended complaint fails to state a Fourteenth Amendment due process claim upon which relief may be granted.  (Doc. 22 at 7-12).  Defendants additionally argue that Bell has not stated any basis to recover compensatory or punitive damages.  (Id. at 12-13).

Bell moved to stay resolution of the motion to dismiss pending the completion of fact discovery on January 23, 2023.  (Doc. 25).  Bell argues that there are genuine issues of material fact regarding his claims and that further discovery is needed before the court can properly resolve those questions.  (Id.)

Bell opposed the motion to dismiss on March 17, 2023.  (Doc. 32).  Defendants filed a reply brief on March 30, 2023, making the motion ripe for resolution.  (Doc. 33).  Bell has additionally moved for issuance of a case management order setting discovery and dispositive motions deadlines.  (Doc. 34).

**II.     Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.

5

FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim

6

for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### III.  Discussion

Bell brings his constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

As a threshold matter, we must address Bell's motion to stay resolution of the motion to dismiss. Bell seeks to stay resolution of the motion until discovery has been completed because there are genuine issues of material fact with respect to his claims. (Doc. 25).

We will deny the motion to stay. The motion appears to confuse the standard of review applicable to motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) with the standard governing motions for summary judgment pursuant to Rule 56.[2] At the motion to dismiss stage, the court's only inquiry is to determine whether the complaint states a claim upon which relief may be granted. Twombly, 550 U.S. at 555. Evidence obtained in discovery is neither necessary nor properly considered in performing this analysis. See Mayer, 605 F.3d at 230 ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Consequently, because evidence obtained in discovery may not be considered in determining whether the complaint states a claim upon which relief may be granted, there is no need to stay the motion to dismiss to permit the parties to conduct discovery.

Turning to the substantive arguments for dismissal, we agree with defendants at the outset that dismissal of Bell's Fifth Amendment due process claim is warranted. The due process clause of the Fifth Amendment governs the actions of federal officials, not state officials. Hunter v. City of Pittsburgh, 207 U.S. 161, 176

---

[2] Bel additionally argues in his brief opposing the motion to dismiss that the motion should be treated as a motion for summary judgment pursuant to Rule 12(d). (Doc. 32 at 7). Converting a motion to dismiss to a motion for summary judgment pursuant to Rule 12(d) is only appropriate when the moving party presents "matters outside the pleadings" as a basis for the motion. See FED. R. CIV. P. 12(d). Defendants' motion seeks dismissal based solely on the allegations in plaintiff's complaint and conversion of the motion is therefore not warranted.

(1907); Bergdoll v. City of York, 515 F. App'x 165, 170 (3d Cir. 2013) (nonprecedential)[3] (citing Nguyen v. U.S. Cath. Conf., 719 F.2d 52, 54 (3d 1983)).

We will also dismiss Bell's retaliation claim and all claims against defendant Houser for Bell's failure to allege personal involvement. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. Id. A defendant's review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement in an underlying violation of the prisoner's constitutional rights. Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).

The amended complaint does not allege any facts as to how defendants were personally involved in the retaliation Bell purportedly experienced. All of the allegedly retaliatory actions were committed by unnamed officials in the prison's mailing department, (see Doc. 13 ¶¶ 26, 34-36), and there is no allegation that Boone or Houser personally directed or acquiesced in the retaliation. Boone's role as mailing department supervisor is not sufficient to allege his personal involvement. See Rode, 845 F.2d at 1207 (noting that personal involvement in civil rights claim

---

[3] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

9

cannot be based solely on operation of *respondeat superior*). Similarly, the only allegations against Houser are that he reviewed and denied Bell's grievances, which is not sufficient to allege personal involvement. Dooley, 957 F.3d at 374.

We will deny the motion to dismiss with respect to Bell's Fourteenth Amendment due process claim against defendant Boone. Fourteenth Amendment procedural due process claims require allegations that (1) a state actor deprived plaintiff of a protected interest in life, liberty, or property; and (2) the state did not provide sufficient process. Reed v. Goertz, 598 U.S. __, 143 S. Ct. 955, 961 (2023).

Defendants argue that Bell does not have a property interest in his tax rebate check. (Doc. 22 at 12). Defendants acknowledge that inmates have a property interest in funds held in an inmate trust account but note that the rebate check is allegedly not yet in Bell's account and is being withheld. (Id.)

This argument commits the logical fallacy of denying the antecedent.[4] The fact that an inmate has a property interest in money held in his inmate trust account does not imply that he lacks a property interest if the money is not in his inmate trust account.

We find that Bell has adequately alleged a property interest in his tax rebate check. The case is analogous to Higgins v. Beyer, 293 F.3d 683 (3d Cir. 2002). In Higgins, a prisoner plaintiff received a $7,608 check from the United States

---

[4] Denying the antecedent is to erroneously infer from the logical sequence "if P then Q" that "not P" implies "not Q." See, e.g., STEVEN PINKER, RATIONALITY 83 (1st ed. 2021). In other words, "*If P then Q* does not entail its converse, *If Q Then P*, or its inverse, *If Not P then Not Q*." Id.

Treasury as payment for a disability benefits claim from the Department of Veterans Affairs. Id. at 686. The plaintiff was not given the check and did not consent to the check being deposited in his inmate trust account, but prison officials nonetheless withheld the check to pay a portion of an outstanding fine that the plaintiff had been ordered to pay by the New Jersey Superior Court. Id. at 686-87. The plaintiff brought suit pursuant to Section 1983, alleging, *inter alia*, that the defendants' confiscation of his check violated his right to due process. Id. at 687-88. The district court dismissed the complaint for failure to state a claim upon which relief may be granted, but our court of appeals reversed, holding that the plaintiff had a property interest in the check and had adequately pleaded that the confiscation of the check violated his right to due process. Id. at 693-94.

     Like the plaintiff in Higgins, Bell alleges that a check was mailed to him and that prison officials deprived him of the check without his consent and without any process. We find this sufficient to plead a violation of his right to due process. The amended complaint also sufficiently alleges Boone's personal involvement. According to the complaint, Boone told Bell that upon receiving a check on behalf of an inmate, he would write a receipt for the check and then submit it to the inmate accounts department for deposit in the inmate's account. (See ¶ 17). The amended complaint alleges that a check was subsequently mailed to the prison and was not transmitted to the inmate accounts department in accordance with the process outlined by Boone. (Id. ¶¶ 22-24). Liberally construing the amended complaint as we must, we find these allegations sufficient to allege that Boone was personally involved in the confiscation of Bell's check.

11

We will additionally deny the motion to dismiss to the extent it seeks to dismiss plaintiff's claims for compensatory and punitive damages.  Bell has clearly stated a basis for compensatory damages by alleging that Boone was personally involved in confiscating a check for $1,802.07 from him.  As for punitive damages, juries may award punitive damages in civil rights cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000).  At this stage of litigation, we cannot say as a matter of law that Bell would be unable to prove that defendant Boone acted with reckless or callous indifference to his civil rights.

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile.  Phillips, 515 F.3d at 245.  We will deny further leave to amend as futile with respect to the dismissed claims.  Bell has had multiple opportunities to state additional claims upon which relief may be granted but has failed to do so.

Finally, because this case will proceed past the pleading stage with respect to Bell's Fourteenth Amendment due process claim against defendant Boone, we will grant Bell's motion to set a case management schedule.

**IV.     Conclusion**

    We will grant in part and deny in part defendants' motion to dismiss, deny plaintiff's motion to stay resolution of the motion to dismiss, and grant plaintiff's motion to set a case management schedule.  An appropriate order shall issue.

                                        /S/ CHRISTOPHER C. CONNER
                                        Christopher C. Conner
                                        United States District Judge
                                        Middle District of Pennsylvania

Dated:     May 30, 2023