IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARL EDWARD BELL,** : | CIVIL ACTION NO. 1:22-CV-1383 |
| : | |
| Plaintiff : | (Judge Conner) |
| : | |
| v. : | |
| : | |
| **STEWART BOONE,** : | |
| : | |
| Defendant : | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983.  Plaintiff, Carl Edward Bell, alleges that defendant, Stewart Boone, a prison official in Benner Township State Correctional Institution ("SCI-Benner Township"), violated his rights under the Fourteenth Amendment by confiscating a tax rebate check without providing due process.  Boone has moved for judgment on the pleadings and Bell has moved to strike Boone's answer.  Both motions will be denied.

**I.     Factual Background & Procedural History**

Bell has been incarcerated in SCI-Benner Township at all relevant times.  He filed his original complaint on September 7, 2022.  (Doc. 1).  The court dismissed the complaint for failure to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A on September 14, 2022, and granted Bell leave to amend.  (Docs. 8-9).  Bell timely amended his complaint on October 10, 2022, and the court received and docketed the amended complaint on October 18, 2022.  (Doc. 13).

According to the amended complaint, Bell filed a 1040 tax form with the Internal Revenue Service ("IRS") on October 11, 2020, to apply for a tax rebate. (Doc. 13 ¶ 11).[1] Bell did not receive his rebate for several months, despite other inmates in the prison receiving rebates during that period. (See id. ¶ 12). On February 8, 2021, he received a memorandum from the Pennsylvania Department of Corrections ("DOC") stating that inmates could claim a rebate credit on their 2020 tax returns if they had not previously received their tax rebates. (Id. ¶ 13).

Bell wrote a letter to SCI-Benner Township's inmate accounts department on February 8, 2021. (Id. ¶ 14). In the letter, he stated that he was concerned that his tax rebate would be confiscated by prison officials if it were mailed directly to the prison and asked if he could alternatively have the check sent to his aunt, Tammy Bell, who would then forward the check to the prison. (Id.) Bell received a response to the letter on February 11, 2021 from the inmate accounts department, stating that if the prison received the check it would be deposited in his inmate trust account. (Id.)

Bell sent a second letter on February 9, 2021, addressed to Boone, the supervisor of SCI-Benner Township's mailing department. (Id. ¶ 16). The letter asked if Boone was confiscating tax rebate checks mailed to the prison and asked why inmates had not yet received their checks. (Id.) Boone responded on February

---

[1] The court takes judicial notice that the IRS provided advance payments for tax rebate credits on 2020 tax returns during the calendar year 2020 as a form of economic stimulus during the COVID-19 pandemic. See *Recovery Rebate Credit*, INTERNAL REVENUE SERVICE, https://www.irs.gov/newsroom/recovery-rebate-credit (last visited February 22, 2024).

11, 2021, allegedly stating that he was not confiscating checks and that if he received a check in the mail he would write a receipt for the check and send it to the inmate accounts department for deposit in the inmate's trust account.  (Id. ¶ 17).

On February 18, 2021, Bell mailed a 1040 tax form to the IRS requesting a tax rebate.  (Id. ¶ 18).  Bell spoke on the phone with Tammy Bell on May 12, 2021, who informed him that she had received his tax rebate check for $1,802.07 on May 10, 2021.  (Id. ¶ 20).  Bell requested that Tammy Bell send the check to the inmate accounts department.  (Id. ¶ 21).  She purportedly did so on May 14, 2021.  (Id. ¶ 22).  Bell allegedly wrote a letter to the inmate accounts department on May 14, 2021, stating that Tammy Bell had sent the check.  (Id. ¶ 23).  Bell did not receive a response to the letter or a follow-up letter that he sent a week later.  (Id. ¶ 24).

On August 28, 2021, Bell wrote a letter to the IRS inquiring as to the status of his tax rebate.  (Id. ¶ 27).  He received a response on October 1, 2021, from IRS agent Marjorie Gallagher, who confirmed that the IRS had sent him the rebate.  (Id. ¶ 28).  Bell filed a grievance against Boone on the same date, alleging that Boone and his subordinate employees in the prison's mailing department had violated his First Amendment rights and his right to due process.  (Id. ¶ 29).

Bell spoke with Captain Bookheimer on October 15, 2021 regarding his grievance.  (Id. ¶ 30).  Bookheimer had previously reviewed the response Bell received from Gallagher and purportedly stated that he would attempt to get Bell compensated for the tax rebate.  (Id.)

Bell's grievance was denied on October 20, 2021. (Id. ¶ 31). He appealed to the prison's superintendent, defendant Houser.[2] (Id. ¶ 32). Houser denied the appeal on November 30, 2021, and Bell purportedly appealed to the DOC's central office. (Id.) Bell avers that he has not received a response to the appeal. (Id. ¶ 33). Bell has purportedly attempted to communicate with Gallagher in the ensuing months but has had his attempts to send mail to her rejected by the mailing department, allegedly in retaliation for Bell filing his grievances. (Id. ¶¶ 34-35). Officials in the mailing department have also allegedly hindered Bell's ability to communicate with an outside attorney in retaliation for the grievances. (Id. ¶ 36).

The complaint asserts civil rights claims pursuant to Section 1983 against Boone and Houser for retaliation in violation of the First Amendment and violation of Bell's right to due process under the Fifth and Fourteenth Amendments. (Id. ¶ 41). Bell requests declaratory relief, injunctive relief, and compensatory and punitive damages. (Id. ¶¶ 42-45).

Defendants moved to dismiss the amended complaint on December 23, 2022. (Doc. 21). The court granted the motion in part and denied it in part on May 30, 2023. (Docs. 35-36). The court dismissed Bell's First Amendment retaliation claim, Fifth Amendment due process claim, and all claims against Houser without further leave to amend but allowed the case to proceed with respect to Bell's Fourteenth Amendment due process claim against Boone. (Id.)

---

[2] As noted below, Houser has been dismissed from this case.

Boone answered the amended complaint on August 10, 2023. (Doc. 39). Bell moved to strike the answer pursuant to Federal Rule of Civil Procedure 12(f) on September 25, 2023. (Doc. 40). Boone then moved for judgment of the pleadings on September 29, 2023, arguing that he is entitled to judgment because Bell failed to exhaust administrative remedies prior to filing suit. (Doc. 41). Both motions are ripe for review. The court has additionally extended the deadline for the filing of dispositive motions to twenty-one days after the court's resolution of the motion for judgment on the pleadings. (See Doc. 47).

## II.    Legal Standard

A motion for judgment on the pleadings is the procedural hybrid of a motion to dismiss and a motion for summary judgment. Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc., 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007). Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). To succeed on a Rule 12(c) motion, the movant must clearly establish that no material issue of fact remains to be resolved and that the movant "is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005); see 5C Charles Alan Wright et al., Federal Practice and Procedure § 1368 (3d ed. 2015). A Rule 12(c) motion for judgment on the pleadings is decided under a standard similar to a Rule 12(b)(6) motion to dismiss. See Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017). That is, judgment on the pleadings should be granted only when, accepting as true the facts alleged by the nonmovant and drawing "all reasonable inferences" in that party's favor, the

movant is entitled to judgment as a matter of law. See id. (citation omitted). In deciding motions for judgment on the pleadings, courts may only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### III. Discussion

Bell brings his constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Boone seeks judgment on the pleadings based on Bell's purported failure to exhaust administrative remedies. Under the Prison Litigation Reform Act

6

("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs. Jones v. Bock, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available." Rinaldi v. United States, 904 F.3d 257, 268 (2018) (citing Woodford, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Id. at 266-67 (quoting Ross v. Blake, 578 U.S. 632, 643-44 (2016)).

When a defendant asserts failure to exhaust administrative remedies based on indisputably authentic documents related to the plaintiff's administrative exhaustion attempt, the issue may be considered in the context of a motion for judgment on the pleadings. Cf id. at 262 n.1 (stating that indisputably authentic

7

documents related to administrative exhaustion could be considered in deciding motion to dismiss). The court must continue to accept all factual allegations in the plaintiff's complaint as true for the purpose of resolving the motion and may not resolve disputed issues of fact. See id.

Exhaustion of administrative remedies in the DOC is governed by the DOC's grievance policy, DC-ADM 804. Under DC-ADM 804,[3] a prisoner must first submit a written grievance within fifteen days from the date of the incident. DC-ADM 804 § 1(A)(8), available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (last visited Feb. 22, 2024). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." Id. § 1(A)(11). Next, the prisoner must submit a written appeal to an intermediate review level within fifteen working days. Id. § 2(A)(1)(a). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days. Id. § 2(B)(1)(b).

We find that Boone has not met his burden to establish failure to exhaust administrative remedies at this stage of litigation. Boone argues that the grievances and associated appeals Bell filed during the relevant period—which Boone has

---

[3] The court takes judicial notice of DC-ADM 804 as information that has been made publicly available on a government website. See Vanderklok v. United States, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

8

attached to his answer—establish that Bell failed to exhaust administrative remedies by failing to pursue his appeals through all stages of the DOC's grievance process. (Doc. 42). Bell's amended complaint, however, alleges that he grieved his claim and appealed the grievance to final review before SOIGA, but that SOIGA failed to respond to the appeal. (See Doc. 13 ¶¶ 32-33). We must accept these allegations as true and may not resolve the disputed factual question of whether Bell appealed his grievance to SOIGA at this stage of litigation. See Rinaldi, 904 F.3d at 262 n.1. We will accordingly deny the motion for judgment on the pleadings.

We will also deny Bell's motion to strike Boone's answer. Under Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). District courts have "considerable discretion" in resolving a Rule 12(f) motion. Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (quoting N. Penn. Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)). In general, such a motion will be denied unless the allegations are severely prejudicial to one of the parties and unrelated to the plaintiff's claims. Id.; see also 5C Charles Alan Wright et al., Federal Practice & Procedure § 1382 (3d ed. 2016). A party is prejudiced when the challenged pleading "confuses the issues" or places an undue burden on the responding party. Karpov v. Karpov, 307 F.R.D. 345, 348 (D. Del. 2015). "Motions to strike are generally disfavored and rarely granted." U.S. Bank Nat'l Ass'n v. Gerber, 380 F. Supp. 3d 429, 438 (M.D. Pa. 2018) (Conner, C.J.) (citing Mifflinburg Tel., Inc. v. Criswell, 80 F. Supp. 3d 566, 572 (M.D. Pa. 2015)).

Bell asserts that striking the answer from the record pursuant to Rule 12(f) is appropriate because the answer does not comply with the pleading requirements of Federal Rule of Civil Procedure 8. (Doc. 40). Bell advances three arguments as to how the answer violates Rule 8, none of which have merit.

Bell's first argument is that Boone's responses to Paragraphs 11-12, 20-24, and 30 of the amended complaint violate Rule 8 by "both admitting and denying" the allegations of the amended complaint. (Doc. 40 at 2). We find that Boone's responses to these averments comply with Rule 8. Boone neither specifically admits nor denies these averments, but rather states that he is "without knowledge or information sufficient to form a belief as to the truth or falsity" of them. (See Doc. 39 ¶¶ 11-12, 20-24, 30). This is an acceptable response in an answer and has the effect of denying the averments. See FED. R. CIV. P. 8(b)(5) ("A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.").

Bell's second argument is that the answer violates Rule 8 by failing to respond to Paragraphs 16 and 17 of the amended complaint, which summarize the contents of two exhibits attached to the amended complaint. (See Doc. 13 ¶¶ 16-17). Boone admits that Bell has attached the exhibits to the amended complaint, but denies Paragraphs 16 and 17 to the extent that they characterize the contents of the exhibits, noting that the documents speak for themselves. (See Doc. 39 ¶¶ 16-17).

We will deny the motion to strike Paragraphs 16 and 17 of the answer. We construe Boone's responses as admissions that the contents of the exhibits attached to the amended complaint are what they purport to be, which we find to be an

10

appropriate response in this case.  See Graham Eng'g Corp. v. Adair, No. 1:16-CV-2521, 2018 WL 1907063, at *2 (M.D. Pa. Apr. 23, 2018) (Conner, C.J.) ("[T]he response that a document speaks for itself is generally deemed an admission that the contents of a document are what they are purported to be.").

Finally, Bell asserts that two of the affirmative defenses advanced by Boone—immunity and failure to exhaust administrative remedies—should be stricken from the answer because they are "false." (Doc. 40 at 3-4).  Bell elaborates that Boone "does not have immunity" and that Bell "exhausted his administrative remedies." (Id.)  This argument is without merit.  Affirmative defenses should not generally be stricken as insufficient on their merits unless there is "no set of facts which could be inferred from the pleadings in support of the defenses." Dann v. Lincoln Nat'l Corp., 274 F.R.D. 139, 145 (E.D. Pa. 2011).  There appears to be a sufficient factual basis from the pleadings for Boone to assert the affirmative defenses of failure to exhaust administrative remedies and qualified immunity.  Whether Boone can ultimately prevail on these defenses cannot be resolved at this stage of litigation.  Hence, we will deny the motion to strike these affirmative defenses.

## IV.   Conclusion

We will deny Boone's motion for judgment on the pleadings and Bell's motion to strike. In accordance with our prior order, the deadline for the filing of all dispositive motions shall be extended to twenty-one days from the date of this memorandum and the accompanying order. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER  
Christopher C. Conner  
United States District Judge  
Middle District of Pennsylvania

Dated:     February 23, 2024